UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEQUANDRE HUNT,

          Plaintiff,

v.

JUSTIN HUNT,

          Defendant.

_____/

Civil Action No. 21-11987

George Caram Steeh
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 39) AND TO DENY AS MOOT DEFENDANT'S RULE 12(c) MOTION TO DISMISS (ECF No. 40)**

On August 18, 2021, *pro se* plaintiff DeQuandre Hunt ("Plaintiff"), an incarcerated person, commenced this civil rights action pursuant to 42 U.S.C. § 1983 against Genesee County Sheriff's Deputy Justin Hunt ("Defendant").[1] (ECF No. 1). In his complaint, Plaintiff alleges that Defendant, a K-9 dog handler, used excessive force against him in violation of the Fourth Amendment when he failed to warn Plaintiff before unleashing K-9 Max, and allowing Max to apprehend Plaintiff inside a vacant house on August 19, 2018. (*Id.*). This case has been referred to the undersigned for all pretrial purposes pursuant to 28 U.S.C. § 636(b). (ECF No. 7).

The case proceeded through discovery, and on January 4, 2023, Defendant filed a Motion for Summary Judgment.[2] (ECF No. 39). On February 6, 2023, Plaintiff filed a

---

[1] Plaintiff DeQuandre Hunt and Defendant Justin Hunt are not related.

[2] On January 5, 2023, Defendant filed a separate Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c). (ECF No. 40). Because the Court is recommending that Defendant's Motion for Summary

response to Defendant's motion (ECF No. 42), and Defendant filed a reply on February 14, 2023 (ECF No. 43).³

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment **(ECF No. 39)** be **GRANTED**.

## II. REPORT

### A. Factual Background

In the early morning hours of August 19, 2018, Defendant, a Genesee County Sheriff's Deputy K-9 handler, received a radio request from the City of Flint Police Department for assistance in tracking and apprehending a suspect in an armed robbery/carjacking involving a gun. (ECF No. 39-2, PageID.130). According to Defendant's sworn affidavit, he was also informed at that time that the suspect may be armed. (*Id.*).

---

Judgment be granted, it need not address the merits of the Motion to Dismiss. Thus, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss **(ECF No. 40)** be **DENIED AS MOOT**.

³ On June 12, 2023, Plaintiff filed a "Rebuttal to Defendant's Motions." (ECF No. 46). This "rebuttal" is not permitted under the applicable court rules, which do not provide for the filing of what is essentially an unauthorized sur-reply brief. Moreover, Plaintiff's "rebuttal" is extremely untimely, as it was filed nearly four months after Defendant filed his reply brief. However, because Plaintiff is proceeding *pro se*, and in order to give the Plaintiff the benefit of every doubt, the Court will consider the arguments set forth in that filing in ruling on the instant motion.

2

At approximately 5:40 a.m., when it was still dark, Defendant and K-9 Max[4] arrived at the scene from which the suspect had fled. (*Id.*; ECF No. 42, PageID.203; ECF No. 46, PageID.266). According to Defendant's affidavit, Max tracked Plaintiff while leashed to a 15-foot line manufactured by Elite K-9; Defendant followed behind Max at all times, holding the leash, and was accompanied by Flint City Police Officer Justin McLeod. (ECF No. 39-2, PageID.130; ECF No. 39-5, PageID.147-48).

After tracking the suspect through several lots overgrown with brush, in the dark, Max alerted at the rear of what appeared to be an abandoned house. (ECF No. 39-2, PageID.130). According to Defendant, there were no doors or windows on the house, the ceiling had fallen in, the outside was overgrown with brush, and there were no indications of occupancy or maintenance. (*Id.*, PageID.130-31).

There is some dispute as to whether Defendant knocked or announced his presence: Defendant indicates in his affidavit that he does not remember whether he did so; Officer McLeod testified at his deposition that he heard Defendant announce the presence of K-9 Max and request that Plaintiff surrender; and Plaintiff claims that Defendant did not announce his presence. (*Id.*, PageID.131; ECF No. 39-5, PageID.148; ECF No. 42, PageID.195). In any event, Defendant avers that he allowed Max to enter the home on the

---

[4] As of August 2018, Max was a well-trained police dog, certified on November 11, 2015, for subject tracking and narcotics detection. (ECF No. 39-2; PageID.130). At the time of the events at issue, Max had approximately three years of training, which commenced when he was ten weeks old. (*Id.*). Max's certification is through the National Association of Professional Canine Handlers. (*Id.*). Plaintiff does not challenge Max's qualifications or otherwise argue that he was not well-trained.

leash,[5] and that within seconds, he heard Plaintiff "yelling and requesting that the dog release him." (*Id.*, PageID.131). Max bit Plaintiff once, and Defendant commanded Max to release Plaintiff. (*Id.*; ECF No. 39-6, PageID.153). Plaintiff was immediately arrested and taken to Hurley Medical Center for treatment.[6] (ECF No. 39-2, PageID.131; ECF No. 39-7).

In his complaint, Plaintiff alleges that his Fourth Amendment rights were violated when Defendant "employed an unleashed K-9 into a residence without first making any verbal announcement or informing anyone inside that he was releasing a K-9 …." (ECF No. 1, PageID.4). Defendant now moves for summary judgment, arguing that there is no genuine issue of material fact as to whether he violated Plaintiff's Fourth Amendment rights and, that even if he did, he is shielded by qualified immunity. (ECF No. 39). For the reasons set forth below, the Court finds merit to Defendant's arguments.

B.  **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir.

---

[5] At his deposition, Plaintiff testified that he did not know whether Max was on a line or a leash at the time he was subdued. (ECF No. 39-6, PageID.154).

[6] Plaintiff claims he was not fleeing from or evading the police at the time of the events in question; rather, he says he was merely sleeping in the abandoned property "to protect it from vandalism." (ECF No. 39-6, PageID.153; ECF No. 42, PageID.197). While not material to the analysis, the Court notes that medical records from Hurley Medical Center indicate that Plaintiff advised that he "was running from the police when he was caught by a police dog and bit in the left buttock and scratched in the left lower leg." (ECF No. 39-7, PageID.156).

2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

In this case, Defendant asserts that he is entitled to qualified immunity from Plaintiff's excessive force claim. (ECF No. 39, PageID.123-26).  The doctrine of qualified immunity insulates state actors from liability in close-call situations. *See Saucier v. Katz*,

533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). "That is, … when a defendant raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must show that those facts and inferences would allow a reasonable juror to conclude that the defendant violated a clearly established constitutional right." *Williams v. Maurer*, 9 F.4th 416, 430-31 (6th Cir. 2011).

In this case, Plaintiff alleges that Defendant violated his Fourth Amendment right to be free from an unreasonable seizure when he "failed to make any announcement that he was releasing a K-9," which subsequently bit Plaintiff once, causing "significant injuries and permanent scaring [sic]." (ECF No. 1, PageID.2, 4). A "seizure" is unreasonable under the Fourth Amendment when it is the product of an officer's use of excessive force. *See Puskas v. Delaware Cty., Ohio*, 56 F.4th 1088, 1093 (6th Cir. 2023). In deciding whether the force used was excessive, courts balance the government's interests in protecting others (including the police) and curbing crime against a suspect's right not to be injured. *Id.* Three factors are particularly relevant: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 1094 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This assessment is made "from the perspective of a reasonable officer at the scene, and not from 'the 20/20

6

vision of hindsight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). Moreover, deployment of a well-trained police dog is "[a]mong the various forms of force available to law enforcement, that is a comparatively measured application of force, which does not carry with it a substantial risk of causing death or serious bodily harm." *Jarvela v. Washtenaw Cty.*, 40 F.4th 761, 764 (6th Cir. 2022) (internal quotations omitted). This is true so long as deployment of the dog is reasonable under the circumstances, as measured by the *Graham* factors. *See Zuress v. City of Newark*, 815 F. App'x 1, 5-6 (6th Cir. 2020).

Applying the *Graham* factors to the instant situation, Plaintiff has not raised a material dispute of fact that the deployment of Max without a verbal warning was unreasonable or violated Plaintiff's clearly established constitutional rights.[7] At the time Defendant released Max to apprehend the suspect, Defendant knew he was suspected of armed robbery/carjacking – very serious, violent offenses – and Defendant had been advised that the suspect was believed to be armed with a gun. (ECF No. 39-2, PageID.130). Defendant and Max were tracking the suspect in the dark, through several lots overgrown with brush, when Max alerted at a home that appeared vacant and was "completely dilapidated," with no doors or windows, a collapsed ceiling, and no sign of occupancy or maintenance. (*Id.*, PageID.130-31). In his sworn affidavit, Defendant attested that the "circumstances were ripe for ambush" given the darkness, the overgrown brush, the condition of the home, and the knowledge that the suspect might be armed. (*Id.*,

---

[7] As set forth above, *supra* at 3, there is some dispute as to whether Defendant knocked or announced his presence. For purposes of ruling on the instant motion, the Court will assume the truth of Plaintiff's assertion that Defendant did not announce his or Max's presence before releasing Max to subdue Plaintiff. *Ciminillo*, 434 F.3d at 464;

7

PageID.131). Thus, all three Graham factors favor a finding that Defendant did not act unreasonably in releasing K-9 Max without a warning.

Case law further demonstrates that, under the unrebutted facts, Defendant did not violate Plaintiff's clearly established Fourth Amendment rights when he allegedly failed to announce his and Max's presence and warn Plaintiff that Max would be released if Plaintiff did not surrender. In *Miller v. Rybicki*, 259 F. Supp. 2d 688, 699 (E.D. Mich. 2017), the court noted that neither the Supreme Court nor the Sixth Circuit had adopted a "bright-line rule that an officer must warn a suspect before allowing a dog to bite." On the contrary, the *Miller* court specifically recognized that such a "bright-line, warn-first rule could create real danger for officers in circumstances" where the officer "believed that he was tracking a potentially-armed suspect in a dark, densely-wooded area," and held that "[u]nder these circumstances, an oral warning could have revealed [the officer's] position and left him vulnerable to attack." *Id.* at 699, n. 5. *See also Jarvela*, 40 F.4th at 765 (holding that "the Constitution does not require a canine handler always to shout out a warning to a fleeing suspect" and finding the officer's actions – when he chose not to shout out a verbal warning while tracking the suspect with a K-9 on a leash – were not unreasonable).[8] Thus, the

---

[8] In his (second) response to Defendant's motion for summary judgment, Plaintiff claims – without citation – that "the record in this case establishes that [Max] was not leas[h]ed when release[d] into the house to attack the Plaintiff." (ECF No. 46, PageID.254). As discussed above, however, Defendant provided sworn testimony that Max was leashed at all times. (ECF No. 39-2, PageID.130). Moreover, when asked at his deposition whether Max was leashed when he bit Plaintiff, Plaintiff answered, "I couldn't tell you," and admitted he didn't "get a good look at the dog . . ." (ECF No. 39-6, PageID.154). Plaintiff cannot create a genuine issue of material fact by contradicting – in mere argument – his own sworn testimony as to a lack of knowledge on this issue. *See Farr v. Winn*, No. 18-11092, 2021 WL 1192973, at \*4 (E.D. Mich. Mar. 30, 2021) (plaintiff cannot overcome a prior statement made under oath with a subsequent contradictory

foundation of Plaintiff's claim – that the law required Defendant to provide advance warning of K-9 Max's release – is flawed. Moreover, the circumstances that confronted Defendant during the incident in question are very similar to those in *Miller*. As in that case, Defendant was tracking a suspect who he reasonably believed was armed and dangerous, at night, in an environment that would lead a reasonable officer to believe an advance warning would put him in great danger. *Miller,* 259 F. Supp. 2d at 699, n.5. Thus, the unrebutted facts establish that the risk to officer safety was sufficiently high during the events in question that K-9 Max's unannounced release was not unreasonable and did not violate a clearly established constitutional right. *Id.*; *Baxter v. Bracey*, 751 F. App'x 869, 872 (6th Cir. 2018) (officer did not violate clearly established law in using K-9 to apprehend a suspect, even after suspect raised his hands in apparent surrender, where suspect was found hiding in an unfamiliar location after fleeing from the police and who posed an unknown safety risk).

In sum, in light of the circumstances that confronted Defendant on the night in question, his release of K-9 Max into the dwelling without providing an advance warning did not violate Plaintiff's clearly established constitutional rights. Accordingly, Defendant is entitled to qualified immunity, and summary judgment should be granted in his favor.[9]

---

statement).

[9] In his responses to Defendant's motion for summary judgment, Plaintiff does not rebut the legal argument that his claims are barred by qualified immunity; rather, he focuses on Defendant's filing of an allegedly false police report, claiming that "Defendant did not possess enough information [about Plaintiff's description] at the time of the arrest to apply excessive force." (ECF No. 42, PageID.196; ECF No. 46, PageID.242). Even assuming the truth of Plaintiff's claim that Defendant did not have a description of the suspect he was seeking, the fact remains that Max, a K-9, was tracking *the suspect's scent*, not his physical description. Thus, whether Defendant had

### III. CONCLUSION

For the above reasons set forth above, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment **(ECF No. 39)** be **GRANTED** and that this case be **DISMISSED** in its entirety and with prejudice.

Dated: July 6, 2023　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served

---

a description of Plaintiff is irrelevant to his excessive force claim.

10

with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 6, 2023.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager